Good morning ladies and gentlemen we're well we're pleased to be with you this morning. On this final day of our sitting this week Judge Nelson and I would again like to acknowledge the contributions of our colleague Judge Eugene Seiler from the Sixth Circuit. He has sat with this court for many many many times and we are grateful to him for his continued service to this court and to the United States. We have three cases on the calendar that have been ordered submitted on the briefs that will be Singh v. Barr, United States v. Rady and Myers v. Checksmart Financial LLC. That leaves us three matters on the oral argument calendar which we will hear in the order in which they appear beginning with Lauren Tory on behalf of appellant Jeremy Clouse I'd like to reserve three minutes for rebuttal and I'll watch my time. We're requesting remand for two primary reasons. First the government breached the plea agreement when it advocated for a harsher sentence and its response that it filed in regards to Clouse's sentencing memorandum. Second independent of the breach this court should review the supervised release conditions because they're unconstitutionally overbroad and vague and therefore not controlled by the I'd like you to spend some time on the first one just with respect to that sort of housecleaning on the on the second one. Isn't there an opportunity once he gets out of out of jail to have to have this revisited? I mean we're sort of in in process of sort of ongoing review of supervisory conditions. There are developments and if there were further developments while he's in while he's in prison he would certainly get the benefit of those. Can't all of this just be cleaned up a little later? Does this have to go back now? Yes your honor it does have to go back now because this is an issue well it depends if this court finds that there's a breach it doesn't necessarily need to review the conditions. Understood. But in in if the court decides that there is no breach in this instance then yes it should still go back because these are vague and overbroad conditions that require rewriting and so. Right but they can't they be rewritten after he's after he's out can't you can't you revisit these questions on which at which point there undoubtedly will be you know further development of law in the Ninth Circuit that will guide all of this? No your honor because the motion if if this court is referring to a motion for modification that would not be appropriate at least at the district court level because these illegal conditions should be reviewed by this court and further it's important for the defendant to understand the extent of which when he would be in violation which is why we're requesting these be rewritten now and we're requesting to the court address these at the present moment. When is he currently scheduled to be released? He's scheduled to be released January 9th of 2020 so he has about 32 months left. January 9th of 2020? 2020. Yeah. Yeah so just two months oh 32 months left. Okay wait 32 months would be two and a half years that doesn't quite add up to 2020. It's gonna be 2022 maybe? That's correct your honor I'm sorry. Okay I think we're gonna have trouble or sounding out that entire decade so it's a lot of twos. So I'd like to go back to that when the government makes statements indicating a preference for a higher sentence than the one agreed to in the plea agreement that is breach and that's exactly what happened in this case. In this case the government and defense counsel agreed in the plea agreement explicitly not to seek any additional enhancements and that language is at ER 105 but then the government filed a response to Klaus's sentencing memorandum in which it made statements that quote the enhancement did not arise out of thin air and quote the enhancement was overlooked and that's at ER 40 through 41. Is the government expected to comment on this? Has the government asked any questions by the by the by the by the probation office? No your honor the government was not asked any questions and I believe it makes that statement in the response itself. Because Judge Jones says look they've got an obligation to add to to truthfully even and they didn't they didn't recommend anything other than the 41 months. They're they're simply they're simply commenting on on evidence that the probation office found. That's correct your honor they are commenting on evidence probation office found which was improper because they cannot bolster the recommendation by probation in saying that probation's investigation was thorough and that this for the court. The court had all the information it needed in the PSR and in the informal objections in the sentencing memorandum. Is there anything that's untrue about what the government said? Yes your honor. What's untrue? So the government said that the enhancement was overlooked and it was not overlooked. In fact. Well but there's a there's a statement in one of the emails from the from the AUSA saying you know unless I've missed something I didn't I didn't see an I didn't see an S&M problem here. That's correct that is what the email says your honor. However we know that there was no mistake in regards to the second report because probation explains that at sentencing hearing at and I can give you the ER site for that. I think it's ER 40 through 41. The probation office explains that there were these two reports. There was the first report that was done during the investigation phase of this case. Then there was a second report which was referred to by different names which reviewed the What happens if you win this appeal? What's the scenario when it goes back down? Isn't it about the same thing that happened? No your honor because what the remedy for this breach would be specific performance. We're requesting that this be remanded for re-sentencing. Specific performance directed against whom? Directed against the government. And what should the government do? Recommend something other than 41 months? No your honor the government cannot inflame the by implying that the court should not. So it has to withdraw any comments on the PSR? And that's going to get you a different sentence from Judge Jones? Given the PSR finds that there is that there was S&M here? So first stating the requisite number of 41 months at sentencing is not enough to cure the breach in this instance. That's what this court's case law says. That was a downward departure wasn't it? Yes your honor. That's what's a little odd here is you're complaining about the government's position which was actually requesting leniency. You wanted them to be more lenient in what they said to the judge? No your honor we didn't want them to be more lenient. We wanted them to follow the plea agreement. Mr. Klaus did not get the bargain for which he struck because the government implied in the sentencing memorandum that the district court should not apply the guideline calculations in the plea agreement. The government implied that the court should follow the guideline calculation that probation recommended which included this four level sentencing enhancement which was improper. That's breach. So the concern is not necessarily what happened at sentencing because everything that took place after the time in which the response was filed was tainted. We can't look to... Do you want this sent to another judge? Yes your honor we do. And and you're willing to take your chances with another judge? Yes your honor. You may you may get a worse sentence than what you got here. That's correct your honor that's possible. However we are concerned with the fact that the government is not standing by its plea agreements and not... I just don't see where the government didn't stand by the plea agreement. The government continued to urge the judge to to give him 41 months. Right but that didn't... All of this was out on the table. It's all very very obvious to Judge Jones you know what the government's position was, what had been negotiated, what it continued to recommend, what the what the PSR said. That the government didn't didn't pour gas on that fire. It just sort of confirmed it was there. It's our position that the government did inflame the based on the language in the response and stating that essentially the court shouldn't consider the plea agreements guideline calculation. That's improper. Where did it say that? What page? So the response is at ER 70 through 71 and it's about the implication of this language where it states on ER at ER 70 that the fact that the parties that there was no sadistic masochistic conduct the plausible. The government is essentially saying in this response that the guideline calculations of the plea agreement should not be followed. That is not presenting... I have a really hard time following that and I don't I didn't see anything in the in the colloquy with the court that suggested the government was was breaching the plea. The government based on this court's case law is not for statements that inflame the court or suggest a harsher sentence which is what this did in saying that the guideline calculation of the plea agreement was was should not be followed or was inaccurate in any way. And then continued on to make statements to remind the court that whatever the court ultimately determines the applicable guideline range is what the government will stick to. But the problem with this language is that it's it's advocating for a harsher sentence and that... Read me the offending sentence one more time. The best best one you've got. I'd say it's twofold. So this is a written statement not an oral statement to the court is that correct? That's correct. This is the response from the government. To the to the probation office? This is a response to Klaus's sentencing memorandum. Okay but it's written to the probation office or was it directed to the court or directed to you? Who was it sent to? It's directed to the court in response to the sentencing memorandum. And this is in a this is in a written letter or an email or something? This is a written response. Okay. And in this response the government makes two offending statements that I think are probably the most important. Although when read as a whole I think the entirety is breached. However the most important statements is that probation's determination of the enhancement did not arise out of thin air. The second most view that the enhancement was overlooked. This is incorrect. The enhancement was not overlooked. The parties had contemplated the enhancement and considered it. And we know that based on the email that was provided by defense counsel at sentencing which stated that the the the first prosecutor on this case had considered whether or not to apply this four level of sentencing enhancement and stating that there were no S&M in this second report. If you win this appeal what happens to that letter or that statement by the U.S. attorneys? It get eradicated or the judge get to look at it or what happens? So we're requesting that we go back to for re-sentencing. So at that point that email would probably not be admitted into evidence because there would have been no breach. The purpose for admitting that email was to show that the parties had contemplated this enhancement and found that the enhancement shouldn't be applied based on the fact that the second report that dealt with the evidence that was seized from the home, the evidence that was in his possession, didn't contain these images. And so it's important and I see your honor that I'm actually running out of time but I just want to explain quickly that the there was no error in this in this case that needed to be corrected. The government did not provide any new information in its response because all this are and therefore the only purpose for this response was to inflame the court and provide language insisting a harsher sentence. Okay I will give you a we've taken up quite a bit of time. I will allow you a minute for rebuttal. Thank you Miss Torrey. Miss Olson. Good morning your honors. Nancy Olson appearing for the United States. May it please the court. Mr. Klaus just pointed to two sentences that he states are the offending sentences that constitute breach in this case. So I'm going to address both of those. The first is that the government said the S&M images mentioned in the police report were overlooked. The second is that the government pointed out the probation's conclusion that two images existed was not out of thin air. Both of those statements are true and I'll explain why. The email that the defense submitted at the sentencing hearing shows that this was overlooked. Because if you look at the text of the email, the email references no S&M based on the 195 images and this is straight out of a forensic report. And so what that means is after the search warrant was conducted, a review is done of all the images that were captured through the search warrant. But that's different than the initial images that came through Google Cyber Tips that tipped the authorities off to Mr. Klaus in the first place. So just because those images weren't on his computer anymore in early 2018, by the time the search warrant was executed, does not negate those images in mid-2017 that came through the Cyber Tips. Does the email create an agreement? Is that how this works? No. So what was in the actual agreement? Was there any recommendation for this enhancement? No, the agreement did not contain this enhancement. And so if you look at the enhancements that were in there, it's things like use of a computer, a total of 195 images, things like that. And so when we say that... So your position, the government's position would be there couldn't have been a breach here anyway because we never agreed not to... Well, you sort of did. No, your honor. If we left it out of the agreement and then we said, oh by the way, we'd like to request it now, that would be a breach. Right, right. But that's based on the agreement, not on the email. The email doesn't create any new obligation. No. What the email was used for at Sentencies was just try to illustrate what was going on when the parties were coming up with this negotiation in the plea agreement. And if you look at the forensic report, it's correct to say that that analyst concluded there's no S&M, but it was done through a Nevada State investigation. And the S&M definition in Nevada is not the same as it is in the guidelines or in Ninth Circuit law. So, okay, so setting that aside, you didn't put it in the plea agreement, but then you did suggest it to the judge. So what do we do with that? No, I don't think it was suggested to the judge. I think if you look at the government's response, what it was trying to do was say, look, the parties plea negotiations are one thing, probation's independent investigation is a separate thing, and the court, of course, has final discretion to set a sentence. And so in that response, we didn't say anything like, in fact, it does apply, and here's why I'll point you to the two images, and I'll point you to the police report, and so on. We didn't introduce any factual information like that. We were trying to delineate what was going on between negotiations on the one hand, what probation did on the other hand, and saying, of course, probation is allowed to do its job. And if you look to the content of the sentencing hearing itself, it further illustrates no breach, because no fewer than four times did the government say that the 41 months that the parties had essentially agreed to should be applied. No fewer than five times did it say the enhancement should not be applied. And, of course, Judge Jones very much... So if that's true, you said the enhancement shouldn't apply, but then you make a suggestion that, well, S&M, there's at least some that if the government had gone in and said, well, we do now think that the enhancement should apply, that would have been a breach. Absolutely. But here they said the enhancement shouldn't apply, but wink, wink, there's some facts here that might suggest it could. I think this is like the Maldonado case, Your Honor, where if the government notices an error later, the government can say we made an error, but we can say, Your Honor, under no circumstances should you apply this. And that's what was going on here. And if you look at Judge Jones' comments, he said 12 different times, under no certain circumstances is the government going to be heard to somehow argue for this enhancement. So is your position that because the government said the enhancement doesn't apply, we recommend that it doesn't apply, there's no prohibition on what else they could have said? No. I mean, there certainly are other comments the government could have made that would have breached, even if they'd said, well, it just doesn't apply here. For example, let's say we brought those images to sentencing and we said, Your Honor, we're going to show you these really horrific images of penetration involving small children. That probably would have been breached because that would have been inflammatory. It would have been really driving the point home about why this S&M enhancement needed to apply in the first place. And those images were not part of the original 195? No. So what happened was Google scans for child pornography, just as a general matter, and if they get any hits that they think is illegal at child porn images, they'll alert authorities. And so in those original hits is where these S&M images came from. There were two. Defendant doesn't really contest that those existed. He's just arguing about a breach. So we know that they existed. But what happened was when the parties were negotiating, only looking at that final forensic report, when you see initial tip images and things that you get before the search warrant, of course, content can change over time. And the tips were mid-2017. The search warrant was early 2018. He deleted the images, apparently. So no one's really contesting that those existed back then. It's just that the parties... But they weren't part of the 195? That's correct. They were not. What do we do with... Does part 6F, paragraph F, called additional sentencing information, does that have any bearing on this? It does, Your Honor. Doesn't it address it directly? It does address it directly. So there's three reasons why what the government did was appropriate. One is 6F. So it says we're allowed to provide correct information in addition to the court and probation. It doesn't even say correct information. It says additional information regarding the nature, scope, extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances. That's right. And I use the word correct just to illustrate what was trying to... the point of what was going on here, which is to say we were just trying to make the record clear. We're not trying to say, Your Honor, please don't apply the S&M enhancement because there is, in fact, no S&M. We were saying, look, something was overlooked and we're not seeking the enhancement, but we can't stand before you, Judge Jones, and claim to you that there is, in fact, no S&M. That would have been a false statement. That would have been entirely inappropriate for the government to do that. There's a difference between a clarification and saying the mistake was made. The government said two times at sentencing... I'm sorry, one time in its response and one time at sentencing that that mistake falls on us. We stand by the lack of that enhancement. We argued for the 41 months. And that was actually an additional benefit to the defendant because the plea agreement said we would recommend low-end of the guidelines as calculated by the court. We recommended low-end as if the mistake hadn't happened. So we recommended 41 months, notwithstanding the court's low-end 63 calculation. And so, in addition to your point, Judge Nelson, about Judge Jones varying downward, we also requested four different times that the court stick with that 41 months, notwithstanding... You didn't request a downward departure. You just requested a low-end of what you calculated the guidelines to be at the time. Yes, and it's kind of one in the same. It's a downward variance from what Judge Jones calculated, but it's also what you just said, which is the low-end of what we thought it would be when we made that negotiation. What about the supervised conditions of release? Which ones have to go back? To your earlier question, Judge Bybee, I think that this can wait. The court is well familiar with the fact that these conditions change all the time, especially in the child pornography context. If you look at the place restriction about not going where children are likely to be, that one's been changed multiple times just in the recent years. Most recently in the Gibson case, that was cited in the 20HA letter. If that one is sent back now, in all likelihood it could need to be modified again, and it's been modified in different ways. But we would say, whether it be now or whether it be upon release in 2022, the place restriction to be that's number four. Although I will point out, if you read number three in conjunction with number four, number three is about not having contact with minors. It has a provision that says, incidental contact during ordinary daily activities in public places is excluded. So if three is going to operate with four, I think you have to really apply that same common sense reading of four, which is to say, of course you can go to the grocery store, of course he can be out and about in public, because the conditions aren't meant to exclude him from being in society and operating in public life. If we said that four needs to be sent back, do you think three needs to be revised as well? No, I don't. I just think if you read three and four together and apply common sense. But he could, if we're sending about, you agree that we need to send seven back, right? I think that Judge Jones' comments on seven were somewhat murky, and so we would not oppose that. Okay. I thought you'd actually... Is it easier to get it fixed now than later? Probably is, doesn't it? It's probably easier from the sense that it would be more recent in everyone's memories. I don't think it would necessarily foreclose the possibility that it might have to be revised again in the future. But of course, you could say that about any case. Right. Okay, other than four and seven, is there anything else that needs to go back? What about five and 10? No, five and 10 and 11 are fine. Five is just the Betts case. That's been long standing Ninth Circuit law for, I think, 10 years. And also, there was a recent unpublished decision in the Jovias case that approved that exact same condition. 10 and 11, it's about monitoring his computer specifically to make sure that he's not downloading child pornography in the future. So it is specific as to how probation's gonna be allowed to do that and the tools they can use. The conditions read together say, if you're gonna have a new computer, probation will do one check at the beginning and make sure that it's working. And then once that's done, it's just ongoing monitoring, which is an automated thing through the capabilities of the software. And then, in addition, probation will check from time to time that he's not trying to circumvent it. So this is very similar to the Quinzon case that Mr. Clouse cited. It's not like sales, which was a counterfeiting case that had nothing to do with this and also no similar language. So I think five, 10 and 11 stand as they are. Okay. Unless the court has any more questions. Thank you, Ms. Olson. Thank you. Ms. Torrey, you've got a minute. Thank you, Your Honors. I'd like to address the statement that the images were overlooked in the response. We know that they were not overlooked. Why don't you tell me about 6F? About 6F? Yeah, paragraph 6F. Roman 6, paragraph F of the plea agreement. Why doesn't that just dispose of all of this? The language stating new information, Your Honor, is that what the court is referring to? Yep. This was not new information. And we know that because the parties had contemplated in the email whether or not to apply this enhancement. But what's important is that the government could not have found these images after another review. It doesn't say new information. It says may provide additional information. It doesn't say new. It says additional information regarding the nature, scope and extent of defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Why doesn't that just fix it? It doesn't fix it, Your Honor, because this wasn't additional information. The court It's not additional information? It's not, because the government in the response is only repeating what's in the PSR. This wasn't additional information. And we know based on what probation stated at sentencing hearing at ER, and I think this is a very important site, ER 40 through 41, it explained that defense was correct. These images were not in the second report. And that's what the parties relied upon in order to come to this factual basis that this enhancement should not be applied. There was no need for the government to file this response because the information that the court needed was all in the PSR. There was no additional information the government was providing. And further, we know based on what probation represented at sentencing hearing that these images weren't in the final report. And defense counsel never stated on the record that there were no no images to support the enhancement whatsoever. Defense counsel simply stated that they followed the conclusions based on the final report. On the supervisory conditions, which ones need to go back? We're requesting that all of them go back except for a place condition number four. It's our position that place condition, the place restriction condition, which is number four, should be stricken. Number five, the warrantless search condition, we're requesting that be vacated. The special conditions 10 and 11, the unlimited computer monitoring condition, requesting that those be remanded with instructions because these extend to any device used by the defendant for work or personal purposes, whether or not the defendant owns that device, which is very problematic. And then number seven, we're also requesting that the oral pronouncement match the judgment. Thank you very much. Thank you, Your Honor. Thank you, counsel, for the argument. United States versus Klaus is submitted.
judges: Siler, Bybee, R. Nelson